```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
SHATEEK AMIN BILAL,                      :
                                         :
                    Plaintiff,           :    08 Civ. 6664 (DLC)
                                         :
          -v-                            :
                                         :    OPINION & ORDER
NEW YORK CITY DEPARTMENT OF              :
CORRECTIONS; CHIBIKO ONYEUKWU; GAYLORD   :
PRADO; OBINNA OBIEYISI; DANETTE          :
MARONEY; PRISON HEALTH SERVICES;         :
WESTCHESTER MEDICAL CENTER; and          :
WESTCHESTER DEPARTMENT OF CORRECTIONS,   :
                                         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

APPEARANCES:

For Plaintiff:
Theodore Edelman
Maura Miller
C. Megan Bradley
125 Broad Street
New York, NY 10004

For City Defendants:
Paul Stuart Haberman
99 Park Avenue
New York, NY 10016

For Westchester Defendants:
James J. Wenzel
Assistant County Attorney
148 Martine Avenue, Room 600
White Plains, NY 10601

DENISE COTE, District Judge:

   Plaintiff Shateek Amin Bilal ("Bilal" or "plaintiff"), a prisoner suffering from epilepsy, brings this civil rights action for compensatory damages, punitive damages, and

injunctive relief against three groups of defendants: New York City Department of Corrections ("NYCDOC")[1] and Prison Health Services, Inc. ("PHS") (collectively, the "NYC Entity Defendants"); four individuals, including Chibiko Godwin Onyeukwu ("Onyeukwu"), Gaylord Prado ("Prado"), Obinna Obieyisi ("Obieyisi"), and Danette Maroney ("Maroney") (collectively, the "Individual Defendants"); and Westchester County Department of Correction ("Westchester Correctional")[2] and Westchester Medical Center ("Westchester Medical")[3] (jointly, the "Westchester Defendants").  Bilal alleges that the Individual Defendants were deliberately indifferent to his serious medical needs during a nine-day period in June 2006, and asserts that the NYC Entity Defendants and Westchester Defendants violated the Rehabilitation Act and the Americans with Disabilities Act ("ADA").  The NYC Entity Defendants and Individual Defendants (collectively, the "City Defendants") and the Westchester

---

[1] The City Defendants represent that NYCDOC is properly sued as the City of New York.

[2] The Westchester Defendants represent that Westchester Correctional is a department within the County of Westchester and not capable of being independently sued.

[3] Westchester Medical appears in this action through the Westchester County Attorney's Office, the same counsel representing Westchester Correctional.  The Third Amended Complaint identifies Westchester Medical as "a public benefit corporation" that "provides medical services to Westchester Correctional."  In their motion to dismiss, the Westchester Defendants do not dispute this characterization.

2

Defendants move to dismiss all claims. For the following reasons, the City Defendants' motion is denied as to the § 1983 claim and denied without prejudice as to the Rehabilitation Act and ADA claims. The Westchester Defendants' motion is granted.

## BACKGROUND

The following facts, taken from the plaintiff's December 18, 2009 "clarified and third amended complaint" (the "Third Amended Complaint"), are assumed to be true in deciding this motion. Bilal is an adult male with epilepsy, which he asserts is "a serious and disabling medical condition that commonly subjects those who suffer from that disability to seizures that could cause them serious bodily injury." Plaintiff has had epilepsy since childhood. In order to prevent or minimize the risk of epileptic seizures, plaintiff takes an anti-seizure medication called Depakote.[4] At all relevant times, Bilal was under doctor's orders to take this medication every day. Because Bilal was incarcerated throughout the events in question, he was dependent on correctional staff to obtain his daily supply of anti-seizure medication.

---

[4] According to the Third Amended Complaint, regular administration of Depakote "significantly reduces the risk of a seizure." In order to function effectively, the amount of Depakote in the bloodstream "must remain within a certain range." If the amount of the medication in the bloodstream falls outside of that range, the person is at risk of experiencing a seizure.

3

On June 5, 2006, several days prior to a scheduled court appearance in Bronx Supreme Court, Bilal was transferred from Westchester County Jail in Valhalla, New York, to the NYCDOC facility at Rikers Island ("Rikers"). As part of this process, Bilal passed through Westchester Correctional Central Booking, where he was transferred to the custody of corrections officers from Rikers. While at Westchester Correctional Central Booking, Bilal's transfer paperwork was processed by a corrections officer identified as "Shield 171." Bilal informed both Shield 171 and the Rikers officers who were present that he requires daily anti-seizure medication, and Bilal asked to carry this medication with him to Rikers. Shield 171 responded that Bilal should request the medication from Rikers staff following his arrival. Thereafter, Shield 171 did not take any further steps to ensure that Bilal received his medication while Bilal was incarcerated at Rikers.

Bilal arrived at Rikers about midday on June 5 and remained in Rikers Island Central Booking until late in the evening. At some point that evening, Bilal received a medical screening from Dr. Onyeukwu, and Bilal informed both Onyeukwu and a physician's assistant that he was epileptic and required anti-seizure medication. Onyeukwu told Bilal that he had no record of Bilal's need for medication, so Bilal asked Onyeukwu to double-check this information. Onyeukwu then called the Westchester

4

Defendants multiple times to inquire about Bilal.  The first time Onyeukwu called, he was told that Bilal did not need any medication, but the second time he called, he was told that Bilal did, in fact, require anti-seizure medication.  Onyeukwu then administered one dose of anti-seizure medication and informed Bilal that, thereafter, he could obtain his medication during evening "medication runs."  Onyeukwu then neglected to indicate on Bilal's medical intake forms that Bilal was epileptic, and also failed to order the appropriate medication so that it would be available during future medication runs.

Over the next few days, Bilal repeatedly attempted, without success, to obtain his anti-seizure medication during evening medication runs.  The Rikers medication dispensary, staffed by a rotation of various corrections officers, was variously attended during Bilal's time at Rikers by Prado, Obieyisi, and Maroney.  Each time he visited the dispensary, Bilal was told that there was no medication available for him.  When Bilal told the officer staffing the dispensary that he was epileptic and required anti-seizure medication, the staffperson told Bilal that he or she was not authorized to give him medication and, moreover, would not be willing to make inquiries on Bilal's behalf.[5]  This pattern continued for at least seven consecutive

---

[5] The Third Amended Complaint alleges, for instance, that Prado told the plaintiff that "it was not his job to call anybody

days, and each time, Bilal did not receive his medication.[6]

On June 13, 2006, Bilal was transferred back to the custody of Westchester Correctional.  Once back in Westchester County, Bilal made a court appearance in Yonkers, to which he was escorted by Yonkers police officers.  Following his court appearance, Bilal was taken back to Westchester Correctional in a transfer van.  Upon arriving at the jail complex, the transfer van sat in the parking lot for approximately 45 minutes, during which time Bilal informed the police officers that he was feeling unwell and might have a seizure.  Bilal then suffered "one or more debilitating seizures" while he was restrained in shackles inside the van.  Westchester Correctional sent personnel from its emergency services unit to respond.  After failing to open the van doors, the emergency personnel finally

---

about Mr. Bilal's medication" and then "ordered Mr. Bilal to move away from the dispensary window."  Another night, when the plaintiff asked Obieyisi to contact someone about his missing medication, Obieyisi "contemptuously informed Mr. Bilal that she was not Mr. Bilal's secretary and would not make any inquiries on his behalf."

[6] After the June 5 medical screening by Dr. Onyeukwu, the only further contact that the plaintiff alleges he had with medical personnel at Rikers occurred on June 10.  On that date, Bilal was instructed by a corrections officer to report to the Rikers Medical Department, where Bilal was asked to undergo a mental health evaluation.  Bilal told the physician conducting the evaluation that he suffered from epilepsy, that he had not received his medication since at least June 6, and that he feared he might have a seizure.  The physician completed a form requesting that Bilal be evaluated by another doctor.  Bilal never received this subsequent evaluation.

removed Bilal from the vehicle by breaking through the van's windows.  They transported Bilal by ambulance to Westchester Medical, where he was diagnosed as having experienced at least one seizure.  As a result of this episode, Bilal has suffered spontaneous and frequent dislocation of his left shoulder, for which he required surgery, as well as frequent migraine headaches, chronic back pain, and a permanently reduced range of motion in his arm.

## PROCEDURAL HISTORY

On July 28, 2008, Bilal, then proceeding pro se, filed this lawsuit against NYCDOC and four "John Doe" defendants.  Bilal subsequently amended his complaint on September 30, 2008, and NYCDOC answered on October 20, 2008.  At the Court's instruction, Bilal filed a second amended complaint on March 25, 2009, naming the four Individual Defendants and also adding PHS, Westchester Correctional, and Westchester Medical as defendants.  The Westchester Defendants filed an answer to the second amended complaint on May 27, 2009, while the City Defendants moved to dismiss and in the alternative for summary judgment on June 29.  Bilal cross-moved for summary judgment on July 15 and submitted a request for pro bono counsel on July 20.

On August 18, 2009, the Court denied the City Defendants' motion to dismiss, denied Bilal's motion for summary judgment,

7

and temporarily stayed further proceedings in this action (the "August 18 Order").  A separate Order, also dated August 18, granted Bilal's request for counsel and directed this Court's Pro Se Office to assist the plaintiff with obtaining pro bono representation.  On November 24, 2009, the above-identified counsel entered notices of appearance on Bilal's behalf, and on December 4, 2009, the Court granted the plaintiff's request for leave to file the Third Amended Complaint, which was submitted on December 18.  The City and Westchester Defendants thereafter informed the Court that they would move to dismiss the Third Amended Complaint.  The instant motions to dismiss were filed on February 19, 2010, and became fully submitted on March 12.

## DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare recitals of the elements of a cause of action, supported by mere

8

conclusory statements, do not suffice.").

A trial court considering a Rule 12(b)(6) motion "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010). To survive dismissal, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Id. (quoting Twombly, 550 U.S. at 555). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

I.  Section 1983 Claim

Bilal asserts a § 1983 claim against the Individual Defendants for deliberate indifference to his serious medical needs in violation of his Eighth and Fourteenth Amendment

9

rights.[7]  "There are two elements to a claim of deliberate indifference to a serious medical condition: [t]he plaintiff must show that [he] had a 'serious medical condition' and that it was met with 'deliberate indifference.'"  Caiozzo, 581 F.3d at 72 (citation omitted); see also Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) ("[N]ot every lapse in medical care is a constitutional wrong.").  Deliberate indifference is a mental state akin to "recklessness," and is measured using a "subjective test" that discerns whether the defendant was "actually aware of an excessive risk to an inmate's health or safety."  Caiozzo, 581 F.3d at 69.

    The Individual Defendants argue that plaintiff has failed,

---

[7] In their motion, the Westchester Defendants represent that Bilal was a "pretrial detainee" during the events in question.  If true, the Eighth Amendment is technically inapplicable.  As the Court of Appeals recently explained:

> In the case of a person being held prior to trial . . . the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply, because as a pre-trial detainee the plaintiff is not being 'punished.'  Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody.

Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (citation omitted).  The Court of Appeals made clear, however, that "[c]laims for deliberate indifference to a serious medical condition . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  Id. at 72.

10

first, to allege that he was deprived of medical care for a "sufficiently serious" condition, Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (citation omitted), and second, to allege that the named individual defendants "act[ed] with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The Individual Defendants argue that "[plaintiff's] allegations amount to, at most, a claim of negligence."

The Court previously considered, and rejected, these arguments following briefing on the City Defendants' June 29, 2009 motion to dismiss the second Amended Complaint. The Third Amended Complaint alleges substantially the same facts as were contained in the second Amended Complaint, and the August 18 Order denying the City Defendants' motion stated conclusively that those facts "are sufficient to state a claim for deliberate indifference to a serious medical need." The Individual Defendants have offered no persuasive reason for altering this ruling.[8] Thus, for the reasons set out in the August 18 Order,

---

[8] The Individual Defendants argue that the ruling should be revisited because the applicable pleading standard has changed. While a court must interpret pro se submissions "to raise the strongest arguments that they suggest," Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) (citation omitted), the Individual Defendants assert that this duty no longer applies because Bilal is now represented by counsel. The August 18 Order did not indicate that it depended upon a liberal construction of the Second Amended Complaint.

11

the Individual Defendants' motion to dismiss must be denied.[9]

## II.  Rehabilitation Act and ADA Claims

The Third Amended Complaint also asserts violations of Section 504 of the Rehabilitation Act and Title II of the ADA against both the NYC Entity Defendants and the Westchester Defendants.[10]  "[T]he same factual allegations generally will support both ADA and Rehabilitation Act claims," and thus, these

---

[9] In the brief accompanying their motion to dismiss, the Westchester Defendants appear to assume that plaintiff has alleged a § 1983 claim against them.  The Complaint states, however, that the § 1983 claim is brought only against the Individual Defendants.  Therefore, it is unnecessary to reach any of the Westchester Defendants' arguments as to why the plaintiff has failed to allege a § 1983 claim against them.

[10] Title II of the ADA provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Epilepsy is recognized as a "disability" under the ADA, Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001), and a state prison may be held liable as a "public entity" under the ADA.  Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); Shomo, 579 F.3d at 185.
    Section 504 of the Rehabilitation Act provides that

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

claims may be considered together.  Fulton v. Goord, 591 F.3d 37, 42 n.1 (2d Cir. 2009); see also Shomo v. City of N.Y., 579 F.3d 176, 185 (2d Cir. 2009).  "To a state a prima facie claim under either the ADA or the Rehabilitation Act, which are identical for our purposes, [plaintiff] must allege: (1) that [he] is a 'qualified individual' with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability."  Fulton, 591 F.3d at 43 (citation omitted).  "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  Id. (citation omitted).  To satisfy the "intentional discrimination" theory, a plaintiff need not demonstrate "personal animosity or ill will," but rather, need only show "deliberate indifference to the strong likelihood of a violation."  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009) (citation omitted).[11]  Plaintiff asserts

---

[11] The Third Amended Complaint appears to rely upon the "intentional discrimination" theory of liability, insofar as the plaintiff alleges that the NYC Entity and Westchester Defendants "discriminated against him solely on the basis of his disability" and demonstrated a "callous and complete indifference to Mr. Bilal's condition and rights."  In opposing

13

that the "program or activity" of which he was denied benefits was "the provision of medication to inmates."

A.   Westchester Defendants

The Westchester Defendants move to dismiss the Rehabilitation Act and ADA claims on the basis that the plaintiff has failed to plead facts supporting each of the required elements.  In particular, they argue that the plaintiff has failed to allege that the Westchester Defendants were responsible for denying Bilal access to his anti-seizure medication.  They assert that the Third Amended Complaint "attempts to impute liability upon the [Westchester] County Defendants for the alleged denial by another entity [i.e., NYCDOC] of services provided by said entity."

The Third Amended Complaint fails to plead a plausible claim against the Westchester Defendants.  The plaintiff has not alleged any facts from which it can be inferred that the Westchester Defendants intentionally discriminated against him, imposed policies that had a disparate impact upon him, or failed to reasonably accommodate his disability.  See Fulton, 591 F.3d at 43.  Bilal does not assert that the Westchester Defendants withheld his anti-seizure medication while he was in their

---

the defendants' motions to dismiss, however, plaintiff asserts that he states a claim under the ADA and the Rehabilitation Act "by alleging either a failure to make a reasonable accommodation or disparate impact."

custody, nor does he plead facts suggesting that they caused him to be denied that medication while in the custody of others.  To the contrary, the Third Amended Complaint itself alleges that the Westchester Defendants informed Dr. Onyeukwu of Bilal's need for medication on the very day that Bilal arrived at Rikers; that Shield 171 told Bilal, in the NYCDOC officers' presence, that he should request his anti-seizure medicine from NYCDOC while at Rikers; and that, upon suffering an epileptic episode, the Westchester Defendants' emergency personnel transported Bilal to the hospital for treatment.  To be sure, Bilal does allege certain facts suggestive of bureaucratic lapses, including that Shield 171 at first misspoke regarding Bilal's need for medication and that the first time Dr. Onyeukwu called the Westchester authorities, he was told Bilal did not require medication.  Bilal does not allege facts suggesting that such conduct rose to the level of discrimination against him, however, when read in the context of the remainder of the Third Amended Complaint's allegations.  Because a court cannot "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," Iqbal, 129 S. Ct. at 1949, the Westchester Defendants must be dismissed from this action.

B.   NYC Entity Defendants

The NYC Entity Defendants also move to dismiss the

15

Rehabilitation Act and ADA claims on the basis that those statutes do not allow prisoners to recover on a theory that they were deprived of medication necessary for treating their medical disability. There appears to be a split in authority on this question. The First Circuit, concluding that "[a]ccess to prescription medications is . . . one of the 'services, programs, or activities' covered by the ADA," held that a plaintiff prisoner who alleged that he was not receiving his medication on a regular basis "may have demonstrated a triable issue of fact" on his ADA claim. Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 286-87 (1st Cir. 2006). The Seventh and Tenth Circuits, however, have held that a plaintiff cannot state a claim under the Rehabilitation Act or the ADA for denial of medical treatment of his disability. See Grzan v. Charter Hosp., 104 F.3d 116, 121-22 (7th Cir. 1997) (plaintiff did not state valid claim for denial of psychiatric treatment "because, absent her handicap, she would not have been eligible for treatment in the first place"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); Johnson v. Thompson, 971 F.2d 1487, 1493-94 (10th Cir. 1992) (no Rehabilitation Act claim where plaintiff "would not need the medical treatment" in the absence of the disability).

Although the Second Circuit has not squarely addressed the

16

question, several cases appear to share the premise underpinning the conclusions of the Seventh and Tenth Circuits.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 274 (2d Cir. 2003) ("[O]ur cases speak simply in terms of helping individuals with disabilities access public benefits to which both they and those without disabilities are legally entitled, and to which they would have difficulty obtaining access due to disabilities." (emphasis added)); Cushing v. Moore, 970 F.2d 1103, 1109 (2d Cir. 1992) ("[T]he rehabilitation act does not create a cause of action based on a handicap that is directly related to providing the very services at issue."); United States v. Univ. Hosp., 729 F.2d 144, 156 (2d Cir. 1984) ("[S]ection 504 [of the Rehabilitation Act] prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question.").  Nevertheless, the Second Circuit has also suggested recently that, although "the [Rehabilitation Act] does not ensure equal medical treatment, [it] does require equal access to and equal participation in a patient's own treatment." Loeffler, 582 F.3d at 275; see also United States v. Georgia, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as . . . medical care" violates the ADA); Fulton, 591 F.3d at 422

17

("The ADA and Rehabilitation Act generously confer the right to be free from disability-based discrimination by public entities and federally funded programs . . . .")

Because the survival of the Rehabilitation Act and ADA claims will not affect the scope of discovery, the Court declines to decide this question of law at this time. Thus, the City Defendants' motion to dismiss is denied without prejudice as to the Rehabilitation Act and ADA claims.[12] The City Defendants may renew their motion to dismiss on summary judgment once a factual record has been developed.

## CONCLUSION

The City Defendants' February 19, 2010 motion to dismiss is denied as to Bilal's § 1983 claims and denied without prejudice as to Bilal's Rehabilitation Act and ADA claims. The Westchester Defendants' February 19 motion to dismiss is granted. The remaining parties shall submit a joint proposed schedule for the remainder of this litigation no later than **May 28, 2010**.

SO ORDERED:

Dated:   New York, New York
         May 10, 2010

*(signed)* Denise Cote
DENISE COTE
United States District Judge

---

[12] The plaintiff may not seek punitive damages against the NYC Entity Defendants for alleged violations of the Rehabilitation Act or ADA. See Barnes v. Gorman, 536 U.S. 181, 189 (2002).